IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

CASEY RAFEAL TYLER,            )
                               )
             Plaintiff,        )
                               )
     v.                        )      1:17CV1104
                               )
KATY POOLE, et al.,            )
                               )
             Defendants.       )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter is before the Court on Defendants Katy Poole and Lachelle Bullard's motion for summary judgment (Docket Entry 30). Plaintiff Casey Rafeal Tyler has filed a response. (Docket Entry 33.) For the reasons stated herein, the Court will recommend that Defendants' motion for summary judgement be granted.

## I. BACKGROUND

The following facts arise from the parties' affidavits and exhibits.

### A. The Parties

Plaintiff is a *pro se* prisoner of the State of North Carolina and was previously incarcerated in Scotland Correctional Institution ("Scotland"). (*See* Complaint ¶¶ I(A), IV(B), Docket Entry 2.) Scotland is a facility in the North Carolina Department of Public Safety, Division of Adult Correction and Juvenile Justice ("NCDPS"). Defendant Poole has been the Correctional Facility Administrator for Scotland since December 2014 (Affidavit of Katy Poole ¶ 3, Docket Entry 31-1.) Defendant Bullard has been a Classification Coordinator for Scotland since December 2014. (Affidavit of Lachelle Bullard ¶ 3, Docket Entry 31-2.) Her

1

duties include processing promotions and demotions of Scotland inmates' custody classifications and levels. (*Id.* ¶ 6.)

## B. The Original Complaint

On December 7, 2017, Plaintiff commenced the instant action by filing a complaint under 42 U.S.C. § 1983 against Defendant Poole. (Compl. ¶ II(A).) Plaintiff alleged violations of his rights under the First, and Eighth, and Fourteenth Amendments. (*Id.* ¶ II(B).) Plaintiff's subsequent briefing clarifies that his claims under the First Amendment are for alleged violations of his rights to freely exercise his religion and freely associate. (*See* Docket Entry 33 at 1, 4.) The facts discussed here pertain to the claims in this complaint.

In July 2017, Scotland reviewed its feeding procedures, and Defendant Poole approved a new policy for the dining hall.[1] (Poole Aff. ¶ 8; Ex. A at 1-6, Docket Entry 31-1.) Per the policy, inmates would no longer be permitted to select the seat and table where they could eat; instead, they would be directed by prison staff to a seat once they exited the serving line. (Ex. A at 4, Docket Entry 31-1.) The purpose of this policy is "to ensure that the inmates confined at Scotland were provided a safer and more secure environment while eating in the dining hall." (Poole Aff. ¶ 8.)

This policy has affected Plaintiff in a number of ways. Plaintiff, who practices Islam, has been required by prison staff to "sit at tables with bloods [sic], crips [sic], gangster disciples [sic], and various mexican [sic] gang members . . . as well as guys that . . . hate Islam" despite his unwillingness to do so. (Affidavit of Casey Rafeal Tyler at 2, Docket Entry 34.) He has

---

[1] Plaintiff states in his Complaint that the policy has been in effect since November 2015. (Compl. ¶ IV(B)-(C).)

2

also been required to sit at tables where other inmates are eating pork, which he states is prohibited by his faith. (*Id.* at 3.) Additionally, Plaintiff is fearful because at least some of the seats requires inmates to sit close and with their backs to the dining hall serving line, which leaves them vulnerable to an attack by another inmate. (*Id.* at 1.) The only alternative Plaintiff has to sitting as directed is to forfeit his meal. (*Id.* at 3.)

Defendant Poole filed her answer to this complaint on March 9, 2018. (Docket Entry 2018.) On November 27, 2018, Plaintiff was transferred to Polk Correctional Institution, where he currently resides. (Bullard Aff. ¶ 11.)

### C. The Supplemental Complaint

On December 13, 2018, Plaintiff filed a supplemental complaint, alleging new § 1983 claims against both Defendants Poole and Bullard. (Supp. Compl., at 4-6, Docket Entry 23.) Specifically, Plaintiff alleges a First Amendment retaliation claim against Defendant Poole, an Eighth Amendment claim against both Defendants, a Fourteenth Amendment Due Process claim against both Defendants, and a Fifth Amendment Double Jeopardy Claim against Defendant Bullard. (*Id.*) The facts discussed here pertain to the claims alleged in the supplemental complaint.

Plaintiff has suffered from poor dental health for several years. (*See* Tyler Aff. at 4.) Prior to Thanksgiving 2017, he began to request teeth that were causing him pain be extracted. (Ex. C at 1, Docket Entry 31-1.) Despite his requests to see a dentist for treatment, he was not seen until April 26, 2018, when he had a tooth pulled after the dentist found "extensive decay." (*Id.* at 81.) Plaintiff had a second tooth pulled on July 19, 2018 (*id.* at 72), and a third

on September 6, 2018 (*id.* at 68). Plaintiff attributes his dental health problems, in part, to Scotland's failure to provide dental floss to inmates in Control Housing. (Tyler Aff. at 3-4.)

On January 1, 2018, Plaintiff left regular population housing at Scotland and applied for protective control housing because he had "missed many meals trying to avoid dining hall staff" and could not "continue to put up with their hostility peaceably." (Ex. F at 2, Docket Entry 31-2.) Additionally, he feared retaliation from Defendant Poole for filing his original complaint in the instant lawsuit. (*Id.*)

NCDPS' protective control policy at the time required that "a determination must be made that the offender's request [for protective control housing] is legitimate and that Restrict Housing is necessary for the continued well-being of the offender." (Ex. C at 1, Docket Entry 31-2.) In accordance with that policy, a non-party NCDPS employee investigated Plaintiff's allegations. (*See* Ex. C at 1, Docket Entry 31-2; Ex. F at 1, Docket Entry 31-2.) In late January 2018,[2] that investigator issued a recommendation to deny Plaintiff's request for protective control housing due to insufficient evidence. (Ex. F at 1, Docket Entry 31-2.) Upon receipt of a copy of the investigation report, Defendant Bullard ordered that Plaintiff be removed from protective custody. (Bullard Aff. ¶ 13.)

Subsequently, on January 23, 2018, a non-party employee of NCDPS ordered Defendant to return to regular population. (Ex. E at 14, Docket Entry 31-2.) However, Defendant refused to do so. (*Id.*) Defendant was charged with a B-25 infraction for failure to obey a prison official's lawful order. (Bullard Aff. ¶ 12; Ex. E at 6, Docket Entry 31-2.)

---

[2] The investigator submitted his recommendation on January 19, 2018 to the shift officer-in-charge, a non-party, who signed the document on January 22, 2018. (Ex. F at 1, Docket Entry 31-2.)

4

Plaintiff was found guilty at a subsequent disciplinary hearing, which was conducted by a non-party hearing officer. (Ex. E at 2-3, Docket Entry 31-2.) The hearing officer also imposed sanctions on Plaintiff, including loss of 30 days of good-time credits. (*Id.* at 2.) Defendant appealed, but the decision was upheld by the chief disciplinary hearing officer. (*Id.* at 2.) In addition to the sanctions imposed by the hearing officer, Plaintiff was placed in control housing between March 8, 2018 and August 10, 2018. (Bullard Aff. ¶ 19.) He then was moved to modified housing, where he remained until he committed additional infractions on November 21, 2018. (*Id.*; Tyler Aff. at 7.)

Additionally, Plaintiff was instructed on February 13, 2018 to provide a urine sample for drug testing. (Ex. D at 1, Docket Entry 31-1.) When Plaintiff refused to comply, he was again charged with an infraction. (*Id.*) The disciplinary hearing officer dismissed this charge because proper procedures were not followed. (*Id.* at 3.)

Defendant Bullard filed her answer to the supplemental complaint on April 8, 2019. (Docket Entry 29.) Defendant Poole did not file an answer to the supplemental complaint. Defendants filed the instant motion for summary judgment, along with an accompanying brief and affidavits, on May 14, 2019. (Docket Entries 30, 31.) Plaintiff subsequently filed a response along with an affidavit[3] on June 17, 2019. (Docket Entries 33, 34.) The matter is ripe for disposition.

---

[3] Plaintiff's affidavit alleges additional wrongs committed against him, including beatings he received from third-party correctional officers after he set a mattress on fire in a cell block. (Tyler Aff. at 7-10.) However, because these claims were not alleged in either the original or supplemental complaint, the Court does not consider them.

5

## II. DISCUSSION

Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Zahodnick v. Int'l Bus. Machs. Corp.*, 135 F.3d 911, 913 (4th Cir. 1997). The party seeking summary judgment bears the initial burden of coming forward and demonstrating the absence of a genuine issue of material fact. *Temkin v. Frederick County Comm'rs*, 945 F.2d 716, 718 (4th Cir. 1991) (citing *Celotex v. Catrett*, 477 U.S. 317, 322 (1986)). Once the moving party has met its burden, the non-moving party must then affirmatively demonstrate that there is a genuine issue of material fact which requires trial. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a fact finder to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Sylvia Dev. Corp. v. Calvert County, Md.*, 48 F.3d 810, 817 (4th Cir. 1995). Thus, the moving party can bear his burden either by presenting affirmative evidence or by demonstrating that the non-moving party's evidence is insufficient to establish his claim. *Celotex*, 477 U.S. at 331 (Brennan, J., dissenting).

When making the summary judgment determination, the Court must view the evidence, and all justifiable inferences from the evidence, in the light most favorable to the non-moving party. *Zahodnick*, 135 F.3d at 913; *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir. 1997). However, the party opposing summary judgment may not rest on mere allegations or denials, and the court need not consider "unsupported assertions" or "self-serving opinions without objective corroboration." *Anderson*, 477 U.S. at 248-49; *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996).

Defendants raise several threshold issues that the Court now addresses.

### A. <u>Mootness</u>

The Court first considers Defendants' argument that any claims raised by Plaintiff that seek injunctive or declaratory relief are moot, as Plaintiff is no longer incarcerated in Scotland. "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for the purposes of Article III—'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (per curiam). However, a case that is not "live," but is "capable of repetition, yet evading review," is not moot. *Murphy*, 455 U.S. at 482. "[A]s a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive and declaratory relief." *Rendelman v. Rouse*, 569 F.3d 182, 186 (4th Cir. 2009); *see also Incumaa v. Ozmint*, 507 U.S. 281, 286-287 (4th Cir. 2007). Here, Plaintiff's claims for injunctive or declaratory relief are moot because he is no longer incarcerated at Scotland. Nor are the claims here "capable of repetition, yet evading review" if he were to return to Scotland, as "he would have sufficient opportunity to re-initiate an action seeking injunctive relief." *See Rendelman*, 569 F.3d at 186. Therefore, Plaintiff's claims for injunctive or declaratory relief cannot survive and should be dismissed.

### B. <u>Sovereign Immunity</u>

The Court next considers Defendants' argument that any claims seeking monetary damages that are brought against them in their official capacities are barred by the Eleventh Amendment. "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Michigan Dept. of State Police*,

491 U.S. 58, 71 (1989) (citing *Brandon v. Holt*, 469 U.S. 464, 471 (1985)). It follows that just as "the Eleventh Amendment bars a damages action against a state in federal court," it also bars suits against state officials in their official capacity. *Kentucky v. Graham,* 473 U.S. 159, 169 (1985). Here, both Defendants are officials of the State of North Carolina. (*See* Poole Aff., ¶ 3; Bullard Aff., ¶ 3.) Therefore, claims seeking damages that are brought against them in their official capacity are barred and should be dismissed.

### C. Qualified Immunity

The Court finally considers Plaintiff's damage claims against Defendants in their individual capacity. Defendants have raised the defense of qualified immunity as to all claims. Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Pidpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 306 (4th Cir. 2006) ("Qualified immunity shields government officials performing discretionary functions from personal-capacity liability for civil damages under § 1983...."). Thus, the two-step qualified immunity inquiry requires a court to determine (1) whether Plaintiff has alleged facts that make out a violation of a constitutional right and (2) whether that right was clearly established at the time of the violation. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *Booker v. South Carolina Dep't of Corr.*, 855 F.3d 533, 538 (4th Cir. 2017). The Court may consider the prongs of the test in any order. *Pearson*, 555 U.S. at 236.

8

"To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (internal quotation marks and alteration omitted). In determining whether a right is clearly established, the Court first considers controlling authority in the jurisdiction, i.e. the decisions of the United States Supreme Court, the Fourth Circuit Court of Appeals, and the North Carolina Supreme Court. *See Booker*, 855 F.3d at 538. Where there is no controlling authority, the Court may consider persuasive authority from other jurisdictions. *Id.* at 539. "It is important to emphasize that [a qualified immunity] inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam) (internal quotation marks omitted) (quoting *Saucier v. King*, 533 U.S. 194, 201 (2001)).

The Court concludes that Defendants have qualified immunity with regard to every remaining claim. Therefore, all claims must be dismissed.

### 1. First Amendment Free Exercise of Religion[4]

Plaintiff argues that Defendant Poole has violated his rights under the First Amendment Free Exercise Clause by approving and enforcing the seating policy. (*See* Docket Entry 4-7.) The Court concludes that Defendant Poole is entitled to qualified immunity.

"In order to state a claim for violation of rights secured by the Free Exercise Clause, an inmate, as a threshold matter, must demonstrate that: (1) he holds a sincere religious belief; and (2) a prison practice or policy places a substantial burden on his ability to practice his

---

[4] Plaintiff does not bring a claim under the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. §§ 2000cc *et seq.*

9

religion." *Carter v. Fleming*, 879 F.3d 132, 139 (4th Cir. 2018) (citing *Thomas v. Review Bd. Of Ind. Emp't Sec. Div.*, 450 U.S. 707, 718 (1981)). A substantial burden occurs when a policy or practice places substantial pressure on the inmate to violate his beliefs or change his behavior. *Id.* "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). In determining whether a prison regulation is reasonable, courts consider several factors: (1) whether there is a valid, rational connection between a legitimate government interest and the regulation; (2) "whether there are alternative means of exercising the right that remain open to prison inmates;" (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally;" and (4) whether there are ready alternatives to the regulation. *Id.* at 89-91. An inmate's "First Amendment rights may be restricted in the interest of prison security." *Hause v. Vaught*, 993 F.2d 1079, 1082 (4th Cir. 1993) (discussing the rights of pretrial detainees); *see also Bell v. Wolfish*, 441 U.S. 520, 545-547 (1979) (same).

The Court assumes here that Plaintiff has alleged the violation of a constitutional right.[5] Nonetheless, Defendant Poole has qualified immunity because the right of a prisoner to

---

[5] Here, Defendant Poole does not challenge the sincerity of Plaintiff's religious beliefs, but instead argues that it does not place a substantial burden on his ability to practice them. (Docket Entry 16.) The Court disagrees. Plaintiff states that his religious beliefs do not permit him to eat at the same table as individuals who are dining on pork, or with individuals who otherwise ridicule Muslim religious practices or commit wrongful acts. (Docket Entry 33 at 5-6.) Therefore, the policy places a substantial burden on his religious beliefs when he is directed to sit with people he views as wrongdoers, including those who are eating pork. Unfortunately, the briefing makes it difficult for the Court go further and engage with the *Turner* factors. Most notably, Defendant Poole has arguably failed to demonstrate a nexus between the seating policy and a legitimate government interest. She states in her affidavit that the policy was adopted "to ensure that the inmates confined at Scotland were provided a safer and more secure environment while eating in the dining hall."

10

decline sitting with or near others who are dining on food forbidden by the prisoner's religion, or otherwise engaging in conduct prohibited by his religion, when his religion does not permit such association, is not clearly established. While there are a number of cases pertaining to a prisoner's right to consume meals in accordance with his religious beliefs, *see, e.g., Carter*, 879 F.3d 132, there do not appear to be any decisions holding that a prisoner has the right to not dine with other individuals, even if doing so is prohibited by the prisoner's religion. Therefore, Defendant Poole is entitled to qualified immunity and this claim should be dismissed.

### 2. First Amendment Freedom of Association

Plaintiff's claim that Defendant Poole has violated his First Amendment right to freedom of association by approving and enforcing the seating policy (Docket Entry 34 at 1-4) also fails to overcome Defendant Poole's qualified immunity, as Plaintiff has not alleged a violation of a constitutional right. "While the First Amendment does not in terms protect a 'right of association,' [the Supreme Court] has recognized that it embraces such a right in certain circumstances." *City of Dallas v. Stanglin*, 490 U.S. 19, 23-24 (1989). Both "intimate association" and "expressive association" are protected by the First Amendment, "social association" is not. *Id.* at 25. Here, even if the Court were to ignore Plaintiff's incarceration and the permitted burdens on his freedom of association, *see Overton v. Bazzetta*, 539 U.S. 126, 131 (2003) ("[F]reedom of association is among the rights least compatible with incarceration."), Plaintiff has not alleged a violation of a constitutional right. Plaintiff seeks to choose for himself with whom who he will, and will not, dine. (*See* Docket Entry 33 at 1.)

---

(Poole Aff., ¶ 8.) However, while safety is a legitimate government interest, Defendant Poole has not provided, nor will the Court speculate, how the seating policy furthers that interest.

11

This is neither an intimate or expressive association protected by the First Amendment. Furthermore, even if Plaintiff has alleged a violation of a constitutional right, that right is not clearly established. Therefore, there is no dispute of material fact regarding Defendant Poole's qualified immunity and Plaintiff's claim should be dismissed.

### 3. Eighth Amendment Cruel and Unusual Punishment (Seating Policy Claim)

Plaintiff next claims that Defendant Poole has violated his Eighth Amendment right to be free of cruel and unusual punishment by approving and enforcing the seating policy. (Docket Entry 8-9.) Defendant Poole is entitled to qualified immunity and this claim should accordingly be dismissed.[6]

Plaintiff has failed to allege a violation of a constitutional right. "The Eighth Amendment, which prohibits infliction of 'cruel and unusual punishments,' applies to claims by prisoners against corrections officials challenging conditions of confinement." *Porter v. Clarke*, 923 F.3d 348, 355 (2019) (citations omitted); *see also Farmer v. Brennan*, 511 U.S. 825, 832 (1994) ("The [Eighth] Amendment also imposes duties on [correctional] officials, who must provide humane conditions of confinement . . .."). Eighth Amendment condition-of-confinement claims are evaluated by a two-part test that has both an objective and subjective

---

[6] Defendant Poole characterizes Plaintiff's claim here as a complaint of conditions of confinement. (Docket Entry 31 at 7.) Plaintiff disputes this characterization and appears to argue that he has been excessively punished for some unspecified conduct of his. (Docket Entry 33 at 8.) The Court agrees with Defendant Poole. Plaintiff contends that correctional officers directed him into situations where he was physically vulnerable and threatened violence against him if he does not comply (*see* Docket Entry 33 at 8), but such allegations comfortably fall within the conditions-of-confinement framework. *See Farmer v. Brennan*, 511 U.S. 825, 829, 834 (1994) (applying the test for conditions-of-confinement cases when an incarcerated plaintiff alleged that prison officials were deliberately indifferent to her safety).

component. *Id.* "First, the deprivation alleged must be, objectively, sufficiently serious." *Farmer*, 511 U.S. at 834 (internal citations and quotation marks omitted). To be "sufficiently serious," "a prison official's act or omission must result in the denial of 'the minimal civilized measures of life's necessities.'" *Id.* (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Second, "a prison official must have a sufficiently culpable state of mind." *Id.* (internal quotation marks omitted) (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). In this context,[7] "that state of mind is one of 'deliberate indifference' to inmate health or safety." *Id.* (quoting *Wilson*, 501 U.S. at 302-303). "A claim of deliberate indifference . . . implies at a minimum that defendants were plainly placed on notice of a danger and chose to ignore the danger notwithstanding the notice." *White ex rel. White v. Chambliss*, 112 F.3d 731, 737 (4th Cir. 1997). "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety . . . ." *Farmer*, 511 U.S. at 837.

Plaintiff's claim does not satisfy either prong of the test for an Eighth Amendment condition-of-confinement claim. First, the alleged deprivation suffered by Plaintiff—his inability to sit where he pleases in the dining hall and being forced at times to sit with people he finds repugnant or dangerous—is not sufficiently serious. Second, alleged facts in Plaintiff's complaints do not indicate that Defendant Poole acted with deliberate indifference

---

[7] There is a subset of condition of confinement cases—those in which prison officials are accused of excessive force—that require a higher level of fault on the part of defendant prison officials, *see Whitley v. Albers*, 475 U.S. 312, 320-321 (1986), but the Court need not determine whether that standard applies, since it concludes that Plaintiff fails to meet the more common and less demanding deliberate indifference fault standard.

to Plaintiff's safety (*see* Compl. ¶¶ IV(D)-VI), nor does any evidence in the record. Indeed, Plaintiff even states in his brief that he never informed correctional officers that some of the people he objected sitting with were, to his knowledge, gang members, instead relying on other excuses. (Docket Entry 34 at 2-3.) Additionally, there is no genuine dispute of material fact regarding whether Defendant Poole was deliberately indifferent to Plaintiff's health or that of other inmates. Defendant Poole indicates in her affidavit that she did not know of Plaintiff's complaints regarding the seating policy, until she was served with the lawsuit, and nothing in the record contradicts this assertion. (*See* Poole Aff. ¶ 10.) The Court concludes Plaintiff has not alleged facts demonstrating a violation of a constitutional right, there is no dispute of material fact regarding Defendant Poole's qualified immunity, and Plaintiff's claim should be dismissed.

### 4. Retaliation Claim Against Defendant Poole

Plaintiff's retaliation claim against Defendant Poole cannot survive. Plaintiff alleges that Defendant Poole retaliated against Plaintiff, in violation of the First Amendment, for his filing of the original complaint against her by punishing him via prison disciplinary procedures and requiring him to provide a urine sample for a drug test. (Supp. Compl. at 4-5.) To succeed on a retaliation claim under § 1983, Plaintiff must establish that "(1) [he] engaged in protected First Amendment activity, (2) [Defendant Poole] took some action that adversely affected [his] First Amendment rights, and (3) there was a causal relationship between [his] protected activity and [Defendant Poole's] conduct." *Constantine v. Rectors and Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005). "[A] plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a 'person of ordinary firmness' from the exercise of First

14

Amendment rights." *Id.* at 500 (quoting *Washington v. County of Rockland*, 373 F.3d 310, 320 (2nd Cir. 2004)). In the context of prison disciplinary proceedings, "[C]laims of retaliation must . . . be regarded with skepticism" because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct." *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994).

Here, while Plaintiff successfully alleges that he engaged in a protected First Amendment activity, *see Borough of Duryea, Pennsylvania v. Guarnieri*, 564 U.S. 379, 387 (2011) ("The Petition Clause [of the First Amendment] protects the rights of individuals to appeal to courts and other forums established by the government for resolution of legal disputes."), his allegations that Defendant Poole took action that adversely affected that right are conclusory (*see* Supp. Compl. at 4-5). Furthermore, the record demonstrates that Defendant Poole did not participate in Plaintiff's disciplinary hearing for the B-25 infraction, except for her refusal to be called as a witness by Plaintiff.[8] (*See* Ex. E, Docket Entry 31-2.) Nor does the record indicate that Defendant Poole was involved in the decision to drug-test Plaintiff or bring the subsequent charges against him when he refused to provide a urine sample. (*See* Ex. D, Docket Entry 31-1.) Therefore, there is no genuine dispute of material fact regarding Defendant Poole's lack of involvement in the allegedly retaliatory acts, Defendant Poole is entitled to qualified immunity, and Plaintiff's retaliation claim should be dismissed.

---

[8] Plaintiff does not allege that Defendant Poole retaliated against by refusing to appear as a witness, but rather states that she "brought the charge" against him. (Docket Entry 23 at 4.)

15

## 5. Eighth Amendment Cruel and Unusual Punishment (Dental Health Claim)

Plaintiff's claim that both Defendants have violated his Eighth Amendment right to be free of cruel and unusual punishment by ignoring his dental problems (Supp. Compl. at 5) also should be dismissed. The Court concludes that Plaintiff has not alleged a violation of a constitutional right. Therefore, both Defendants are entitled to qualified immunity.

Plaintiff has not alleged an Eighth Amendment violation here because, even assuming the loss of several teeth due to delayed medical treatment is sufficiently serious, Plaintiff has not alleged facts demonstrating that Defendants were deliberately indifferent. While Plaintiff alleges that he had tried to receive dental treatment for several months, he at no point states that either Defendant had notice of these attempts, nor does the record indicate that either knew of these problems prior to the commencement of the instant suit.[9] Indeed, it is not even apparent that Defendant Bullard's responsibilities had anything to do with the provision of medical services. (*See* Bullard Aff. ¶ 3). Because Defendants could not be deliberately indifferent of Plaintiff's dental health without notice of the problems he was facing, *see White*, 112 F.3d at 737, Plaintiff has not alleged facts that constitute a violation of the Eighth Amendment. Defendants therefore have qualified immunity, and this claim should be dismissed.

---

[9] Plaintiff states in his supplemental complaint that, upon applying for protective custody, he completed and signed a witness statement that "alleged that dining hall staff would not let [him] eat in peace in the dining hall [and] that [he] had been trying to get [his] teeth pulled since around Thanksgiving 2017 [and] hadn't been seen by the dentist yet." (Supp. Compl. at 1.) However, the statement in fact makes no mention of Plaintiff's dental health problems. (*See* Ex. F at 1, Docket Entry 31-2.)

### 6. Eighth Amendment Cruel and Unusual Punishment (Classification Claim)

Plaintiff's claim that both Defendants violated his right to be free of cruel and unusual punishment by assigning him to punitive segregated housing for over 150 days after his conviction of an infraction (Supp. Compl. at 5-6) also fails. Plaintiff has not alleged a constitutional violation here because he has not demonstrated a sufficiently serious deprivation. *See In re Long Term Admin. Segregation of Inmates Designated as Five Percenters*, 174 F.3d 464, 471-472 (4th Cir. 1999) (holding that three years of solitary confinement is not a "serious deprivation of a basic human need" when plaintiffs have only alleged a "depressed mental state" as a result of confinement). Furthermore, Plaintiff does not allege deliberate indifference on the part of the Defendants with regard to his classification. Therefore, Defendants have qualified immunity and this claim should be dismissed.

### 7. Fourteenth Amendment Due Process

Plaintiff's claim that both Defendants violated his right to due process by denying him protective custody (*id.* at 6) is subject to qualified immunity because Plaintiff has failed to allege the violation of a constitutional right. "The federal constitution itself vests no liberty interest in inmates in retaining or receiving any particular security or custody status "'[a]s long as the [challenged] conditions of confinement . . . is within the sentence imposed . . . and is not otherwise violative of the Constitution.'" *Slezak v. Evatt*, 21 F.3d 590, 594 (4th Cir. 1994) (alterations in original) (quoting *Hewitt v. Helms*, 459 U.S. 460, 468 (1983)). A liberty interest in a particular custody classification can arise from state law that places "substantive limitations on official discretion." *Id.* (quoting *Olim v. Wakinekona*, 461 U.S. 238, 249 (1983)). Yet Plaintiff does not allege that Defendants departed from state procedures regarding protective control.

(*See* Suppl. Compl. at 6; *see also* Poole Aff. at 32-35.) Therefore, Plaintiff has not alleged a constitutional violation, Defendants have qualified immunity, and Plaintiff's claim should be dismissed.

### 8. Sixth Amendment Double Jeopardy

Plaintiff's claim that Defendant Bullard punished him for a disciplinary violation for which he was already sanctioned by the disciplinary hearing officer, and thus violated the Fifth Amendment Double Jeopardy Clause, (Supp. Compl. at 6) also fails in light of Defendant Bullard's qualified immunity. "[T]he Double Jeopardy Clause does not prohibit the imposition of all additional sanctions that could . . . be described as punishment. The Clause protects only against the imposition of multiple *criminal* punishments for the same offense." *Hudson v. United States*, 522 U.S. 93, 98-99 (1997) (emphasis in original) (citations omitted). Prison disciplinary sanctions are not criminal punishments, and thus are not subject to the Double Jeopardy Clause. *See Fogle v. Pierson*, 435 F.3d 1252, 1261-1262 (10th Cir. 2006) (holding that prison disciplinary sanctions do not implicate the Double Jeopardy Clause); *Feaster v. Mueller*, No. 1:18CV2705, 2018 WL 6045263 (D.S.C. Oct. 10, 2018) (same), *adopted by*, 2018 WL 6040840 (D.S.C. Nov. 11, 2018). Therefore, no violation of a right occurred here, and even if one did, said right is not clearly established. Therefore, no genuine issue of material fact exists to question Defendant Bullard's qualified immunity, and this claim must be dismissed.

## III. CONCLUSION

For the reasons stated herein, **IT IS HEREBY RECOMMENDED** that Defendants' Motion for Summary Judgment (Docket Entry 30) be **GRANTED**, and that this action be dismissed.

Joe L. Webster
United States Magistrate Judge

November 25, 2019
Durham, North Carolina